**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
CATHERINE J. GATIEN,

                       Plaintiff,          **MEMORANDUM OF
                                                    DECISION & ORDER**
                  -against-            15-cv-4739 (ADS)

NANCY A. BERRYHILL, *Acting Commissioner
of Social Security*,

                       Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**The DeHaan Law Firm P.C.**
*Attorneys for the Plaintiff*
300 Rabro Drive East
Suite 101
Hauppauge, NY 11788
       By:    John W. DeHaan, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
       By:    Robert W. Schumacher II, Assistant United States Attorney

**SPATT, District Judge**:

       The Plaintiff Catherine J. Gatien (the "Plaintiff") commenced this civil action pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant, Nancy A. Berryhill (the "Defendant" or the "Commissioner"), the acting commissioner of the Social Security Administration (the "Administration") at the time of filing, that she is ineligible to receive Social Security disability insurance benefits.

       The Court notes that the Plaintiff originally named Carolyn W. Colvin as the Defendant in this action, but by operation of law, the present Acting Commissioner, Nancy A. Berryhill is

"automatically substituted as a party." FED. R. CIV. P. 25(d); *see also* 45 U.S.C. §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 12(c) for a judgment on the pleadings. For the reasons that follow, the Plaintiff's motion is granted, and the Commissioner's motion is denied.

## I. BACKGROUND

On February 22, 2013, the Plaintiff applied for disability benefits. She claimed that she was disabled as of February 1, 2011 due to back and neck impairments.

On April 22, 2013, the Administration denied her claim, and the Plaintiff requested a hearing.

On March 18, 2014, ALJ Andrew S. Weiss (the "ALJ") conducted a hearing during which the Plaintiff was represented by counsel. At the hearing, the Plaintiff's counsel amended the Plaintiff's alleged disability onset date to January 31, 2013.

On April 4, 2014, the ALJ issued a written decision denying the Plaintiff's claim. The Plaintiff requested a review by the Appeals Council, but the request was denied on June 15, 2015. At that point, the ALJ's decision became the final decision of the Commissioner.

On August 13, 2015, the Plaintiff commenced the instant action. On July 11, 2016, the parties' cross motions for a judgment on the pleadings were fully briefed. However, the Court did not receive the administrative record until April 20, 2017.

For the purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges presently raised by the Plaintiff. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

### A. The Applicable Law

While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect. *See Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying and referencing version of regulation in effect when ALJ adjudicated plaintiff's claim); *see also Michael Barca, Plaintiff, v. Comm'r of Soc. Sec., Defendant.*, No. 2:16-CV-187, 2017 WL 3396416, at *8 (D. Vt. Aug. 8, 2017) (applying the regulations in effect when the plaintiff filed his application); *Alvarez v. Comm'r of Soc. Sec.*, No. 14CV3542(MKB), 2015 WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the ALJ's decision in light of the regulation in effect at the time of the decision." (citing *Lowry*, 474 F. App'x at 805 n.2));

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Burgess v. Astrue*, 537 F.3d 117, 119 (2d Cir. 2008) (quoting 42 U.S.C. § 423(d)(1)(A)) (quotation marks omitted). In addition, "[t]he impairment must be of 'such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chater,* 221 F.3d 126, 131–32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

In determining whether a claimant is disabled, the Commissioner is required to apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999). The claimant bears the burden of proving the first four steps, but then the burden shifts to the Commission at the fifth step. *Rosa,* 168 F.3d at 77. First, the Commissioner considers whether the claimant is presently working in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i); *Rosa,* 168 F.3d at 77. If the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii); *Rosa,* 168 F.3d at 77. If the severity requirement is met, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in Appendix 1 of the regulations, or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; *Rosa,* 168 F.3d at 77. If the claimant has such an impairment, there will be a finding of disability. If not, the fourth inquiry is to determine whether, despite the claimant's severe impairment, the claimant's residual functional capacity ("RFC") allows the claimant to perform his or her past work. 20 C.F.R. § 404.1520(a)(4)(iv); *Rosa,* 168 F.3d at 77. Finally, if a claimant is unable to perform past work, the Commissioner then determines whether there is other work, such as "light work." that the claimant could perform, taking into account, *inter alia,* the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Rosa,* 168 F.3d at 77.

**B. The Standard of Review**

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the

record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 475, 478 (E.D.N.Y. Nov. 16, 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998)).

Thus, "the reviewing court does not decide the case *de novo*." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.*, and therefore, the relevant question is not "whether there is substantial evidence to support the [claimant's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision.* " *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 U.S. Dist. LEXIS 21427, at *20 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

In this context, "[s]ubstantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess*, 537 F.3d at 128 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of [his or her] decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 337, 340 (E.D.N.Y. 2004) (citing

*DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998), for the proposition that an ALJ's decision may be affirmed where there is substantial evidence for both sides).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

**C. Application to the Facts**

The Plaintiff contends that the ALJ erred in assigning some weight to the medical opinion of the Plaintiff's treating physician, Dr. Thomas J. Dowling ("Dr. Dowling"); that the ALJ's assessment of the Plaintiff's RFC is not supported by substantial evidence; and that the medical-vocational guidelines mandate a finding that the Plaintiff is disabled. The Commissioner disputes each of these points.

**1. As to whether the ALJ Erred in Assigning Some Weight to the Medical Opinion of the Plaintiff's Treating Physician, Dr. Dowling**

Under 20 C.F.R. § 404.1527(c) ALJs are required to weigh and evaluate "every medical opinion." When assigning weight to a medical opinion, ALJs consider the following factors: the nature of the examining relationship; whether or not the medical opinion was made by a treating source; the length of treatment relationship and the frequency of examination; supportability; consistency; specialization; and "other factors . . . which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see also Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is "well supported by . . . other substantial evidence . . . ." 20 C.F.R. § 404.1527(c)(2). When a treating source's medical opinion is not supported by substantial evidence, the opinion will not be afforded controlling weight. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Where an ALJ declines to

6

give controlling weight to a treating physician's opinion, he must provide "good reasons" for doing so, and must consider the above factors in determining the weight to afford to the opinion. 20 C.F.R. § 404.1527(c)(2) ("When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

Dr. Dowling and Dr. Ammaji Manyam ("Dr. Manyam") were the only doctors who offered medical opinions on the Plaintiff's RFC.

Dr. Dowling, a spinal orthopedic surgeon, assessed that the Plaintiff could sit for two hours, and stand or walk for three hours in an eight-hour workday; lift or carry up to 5 pounds frequently, and occasionally lift or carry up to 10 pounds; and occasionally climb stairs, stoop, kneel, and crouch. Dr. Dowling opined that the Plaintiff could not balance or crawl. Dr. Dowling stated that his opinion was supported by the Plaintiff's sciatica, spinal stenosis, disc herniation, degenerative disc disease, and retrolisthesis. Dr. Dowling made this assessment on March 14, 2014, after treating the Plaintiff for a year. During that period, he saw her five times.

Dr. Manyam, an internist, performed a single consultative examination for the Administration on April 10, 2013. Dr. Manyam assessed that the Plaintiff did not have *any* physical limitations regarding her ability to sit, stand, climb, lift, push, pull or carry. She diagnosed the Plaintiff with musculoskeletal neck pain, back pain, leg pain, and hypertension. During what she classified as an internal medicine examination, Dr. Manyam observed that the Plaintiff was not in any acute distress, had a normal gait and stance, and was able to rise and descend from a chair and the exam table without difficulty. The Plaintiff refused to walk on her heels and toes

7

because she said she had back pain and leg pain all over. Dr. Manyam noted that the Plaintiff's cervical spine movements were normal, complete, and relaxed. The Plaintiff winced due to pain emanating from her right buttock area during a lumbar spine examination, but Dr. Manyam stated that there were no obvious signs of inflammation in the area. The Plaintiff told Dr. Manyam that she could not bend much because of back pain. On examination, the Plaintiff had a lumbar spine flexion and extension of 80 degrees, and lateral flexion of 30 degrees. She diagnosed the Plaintiff with musculoskeletal neck pain, back pain, and leg pain. However, lumbosacral and cervical spine x-rays showed degenerative spondylosis/degenerative disc disease at L2-L3 and L3-L4, degenerative spondylosis at C4-C5 through C-6-C7, straightening, and degenerative changes.

There is some confusion about what weight the ALJ assigned to Dr. Dowling's medical opinion. The relevant paragraph in the ALJ's decision reads as follows:

> As for the opinion evidence, Dr. Dowling's opinion was contradicted by the opinion of Dr. Manyam, and was not fully supported by the objective medical evidence. Therefore, Dr. Manyam's opinion was given some weight, but not great weight. Dr. Manyam examined the claimant only once, and h[er] opinion was not fully supported by the objective medical evidence which supports some degree of limitation. Therefore, Dr. Manyam's opinion was given some weight, but not great weight.

(R. at 20).

While it appears that the ALJ committed a ministerial error and inserted Dr. Manyam's name in the second sentence where Dr. Dowling's name should have appeared, the Court cannot rely on this assumption in deciding the Plaintiff's appeal. Pursuant to the Act, the ALJ must assign weight to medical opinions, especially those of a claimant's treating physician. *See* 20 C.F.R. § 404.1527(c). Within the four corners of the decision, the ALJ apparently did not do that. Therefore, the Court must remand this case so that the ALJ can clarify what weight he assigned to Dr. Dowling's opinion.

8

However, the Court must engage in some further analysis because it appears that the treating physician rule was further evaded in the ALJ's decision. For the purposes of this analysis, the Court assumes that the ALJ committed a ministerial error and inserted Dr. Manyam's name in the second sentence where Dr. Dowling's name should have appeared. The Court makes this deduction because in the first sentence, the ALJ stated why Dr. Dowling's opinion should be discounted. Furthermore, the ALJ states in the fourth sentence the weight that should be ascribed to Dr. Manyam's opinion after stating why it should be discounted in the third sentence. Therefore, for the purposes of this analysis, the Court will assume that the ALJ made an error and meant to say that he afforded some weight to Dr. Dowling's opinion.

In support of his decision to discount Dr. Dowling's opinion, the ALJ summarily stated that it was "not fully supported by the objective medical evidence." (R. at 20). He did not refer to any specific objective medical evidence, or state how the objective medical evidence contradicted Dr. Dowling's opinion in any way. Although ALJs are not required to engage in a rote recitation of the treating physician factors, they must still apply the substance of the treating physician rule and give good reasons for discounting a treating physician's opinion. *Sanders v. Comm'r of Soc. Sec.,* 506 F. App'x 74, 77 (2d Cir. 2012) (summary order) (stating that failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand"); *Fontanarosa v. Colvin*, No. 13-cv-03285, 2014 WL 4273321 at *9 (E.D.N.Y. Aug. 28, 2014) ("[T]he ALJ is not required to explicitly discuss the factors, but it must be clear from the decision that the proper analysis was undertaken."). Here, the decision leaves open for speculation what objective medical evidence contradicted Dr. Dowling's opinion. Therefore, the Court finds that the ALJ did not give "good reasons" as to why Dr. Dowling's opinion was not afforded controlling weight, and the ALJ violated the treating physician rule.

Beyond the purported "objective medical evidence," the ALJ also relied upon the opinion of Dr. Manyam when discounting Dr. Dowling's opinion. This was improper. First, it is not clear to the Court how the ALJ relied upon Dr. Manyam's opinion because he afforded it the same weight that he afforded Dr. Dowling's opinion. Second, the opinion of the consultative examiner, on its own, does not constitute substantial evidence which can refute a treating physician's opinion.

As this Court has previously stated, "the ALJ cannot rely solely on the RFCs of [] consulting examiners as evidence contradicting the Treating Physician RFC. This is because an inconsistency with a consultative examiner is not sufficient, on its own, to reject the opinion of the treating physician." *Saldin v. Colvin*, 34 F. Supp. 3d 271, 283 (E.D.N.Y. 2014) (quoting *Moore v. Astrue,* 07–cv–5207 (NGG), 2009 WL 2581718, at *10 n.22 (E.D.N.Y. Aug. 21, 2009) (internal quotation marks omitted)). "The Second Circuit has repeatedly stated that when there are conflicting opinions between the treating and consulting sources, the 'consulting physician's opinions or report should be given limited weight.'" *Harris v. Astrue,* 07–CV–4554 (NGG), 2009 WL 2386039, at *14, 2009 U.S. Dist. LEXIS 67009, at *40 (E.D.N.Y. July 31, 2009) (quoting *Cruz v. Sullivan,* 912 F.2d 8, 13 (2d Cir. 1990)).

Dr. Manyam only observed the Plaintiff on one date, and is not a specialist. It was not clear which previous medical records, if any, she reviewed. Therefore, the ALJ erred when he relied on Dr. Manyam's opinion when discounting the treating physician's opinion. *See Crespo v. Apfel*, No. 97 CIV 4777, 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17, 1999) ("In making a substantial evidence evaluation, a consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day."). While the ALJ stated that he relied upon both Dr. Manyam's opinion and the objective medical

evidence, the Court detailed above why the latter was a hollow statement. Therefore, the ALJ did not give "good reasons" for discounting the treating physician's opinion.

Further, the ALJ's vague reference to "objective medical evidence" also allowed the Commissioner to scour the medical records to find three notations that were made in each of Dr. Dowling's records: that the Plaintiff's impairment level was "[p]atrial moderate-temp[orary]," that she had "no gross weakness in lower extremities," and that her reflexes were within normal limits. First, the Court notes that the ALJ never made reference to any of these notes in his decision. Second, the Commissioner does not address how these notes, which are included in a sea of notes showing that the Plaintiff did not have full range of motion, support discounting Dr. Dowling's opinion or necessitate a finding of a light work RFC.

The Commissioner also relies upon the Plaintiff's activities of daily living and her prior work history, even though the ALJ did not cite those facts in support of his discounting of Dr. Dowling's medical opinion. However, the Second Circuit has made it clear that a plaintiff does not need to be totally disabled to receive disability benefits. *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act."). Here, the Plaintiff did not "engage[] in any of these activities for sustained periods comparable to those required to hold a sedentary job." *Balsamo,* 142 F.3d at 81 (quoting *Carroll v. Sec'y of Health and Human Servs.,* 705 F.2d 638, 643 (2d Cir. 1983) (where claimant read, watched television, listened to the radio, and rode public transportation, such activities were insufficient to show he was capable of sedentary work)); *see also Martin v. Astrue,* 2009 WL 2356118, at *12 (S.D.N.Y. July 8, 2011) ("[M]undane tasks of life . . . do not necessarily indicate that [a claimant] is able to perform a full day of sedentary work"); *Murdaugh v. Sec'y of Dept. of Health & Human Servs.,* 837 F.2d 99, 102 (2d Cir. 1988)

11

(finding claimant who watered the garden and occasionally visited friends disabled). While the Plaintiff was able to perform certain small tasks from time to time, "people should not be penalized for enduring the pain of their disability in order to care for themselves." *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000).

As to her prior work history, the Plaintiff was "let go" in July 2010 before the date of her alleged disability onset date, but the medical records show that her condition had worsened since that time. Notably, the MRIs taken in June 2004 and March 2013 show that the Plaintiff's lumbar spine condition had worsened. Furthermore, she amended her alleged disability onset date to January 31, 2013. Of note, the Plaintiff told Dr. Timothy Groth ("Dr. Groth"), a pain management specialist, that her pain started increasing in December 2012.

Furthermore, while the ALJ noted that the Plaintiff did not seek further treatment from her chiropractor Dr. Paul Brooke after three treatments, Dr. Groth noted that chiropractic treatment made the Plaintiff's pain worse.

Therefore, in the Court's view, the ALJ erred in failing to give good reasons for discounting Dr. Dowling's opinion. The reference to "objective medical evidence" was vague and did not give the Plaintiff the benefit of the treating physician rule. Also, the reliance on the consultative examiner's opinion was misplaced. "The premise of the 'good reasons' requirement is 'to let claimants understand the disposition of their cases, even—and perhaps especially—when those dispositions are unfavorable.'" *Garcia v. Comm'r of Soc. Sec.*, 208 F. Supp. 3d 547, 554 (S.D.N.Y. 2016) (quoting *Snell*, 177 F.3d at 134). Here, the Plaintiff was not afforded the opportunity to understand the disposition of her case.

However, the Court cannot say, as a matter of law, that Dr. Dowling's opinion should have been afforded controlling weight. Indeed, as the ALJ pointed out, his opinion was heavily

contradicted by Dr. Manyam's examination and medical opinion. Dr. Dowling's medical opinion also appears to have relied heavily on the Plaintiff's subjective complaints of pain. The ALJ did not explicitly discount Dr. Dowling's opinion based on this reliance, nor does the Plaintiff raise the issue of credibility on appeal. On the other hand, the MRIs and x-rays supported Dr. Dowling's diagnoses. Finally, the treatment notes of Dr. Brooke and Dr. Groth, a chiropractor and pain management specialist respectively, were not conclusive. It is the province of the ALJ, not the reviewing court, to weigh and evaluate evidence. *See Aponte v. Secretary, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." (internal citations, quotation marks, and alterations omitted)). Therefore, the Court remands this case back to the ALJ for the proper application of the treating physician rule. *See Sanders*, 506 F. App'x at 77 (stating that failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand"). Therefore, the Court remands the case back to the ALJ to properly weigh the treating physician's opinion.

Finally, the Court also notes that on remand, the ALJ is directed to consider the effect of the Plaintiff's obesity on her residual functional capacity ("RFC"). The ALJ explicitly found that the Plaintiff's obesity was a severe impairment, yet never addressed the effects of the Plaintiff's obesity in his decision. This was also error. *See Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"); *Titles II & XVI: Evaluation of Obesity*, SSR 02-1P (S.S.A. Sept. 12, 2002) ("When we identify obesity as a medically determinable impairment (see question 4, above), we will consider any functional limitations resulting from the obesity in the RFC assessment, in

13

addition to any limitations resulting from any other physical or mental impairments that we identify.").

Therefore, the Court finds that the ALJ erred in failing to assign weight to the treating physician's opinion; in failing to give good reasons for discounting the treating physician's opinion; and in failing to consider the effects of the Plaintiff's obesity on her RFC.

### III. CONCLUSION

For the reasons stated above, the Plaintiff's motion for judgment on the pleadings is granted, and the Commissioner's motion for a judgment on the pleadings is denied. The Plaintiff's motion is granted to the extent that this case is remanded back to the ALJ. On remand, the ALJ is to explicitly apply the treating physician rule. That is, he is to evaluate Dr. Dowling's medical opinion and either: 1) afford it controlling weight if it is supported by other substantial evidence in the record; or 2) assign it less than controlling weight if it is not so supported, and give good reasons for the weight assigned. Furthermore, the ALJ is to evaluate the effects of the Plaintiff's obesity on her RFC, as the ALJ found that the Plaintiff's obesity was a severe impairment. The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED:**

Dated: Central Islip, New York

December 13, 2017

                                            ___/s/ Arthur D. Spatt____

                                            ARTHUR D. SPATT

                                            United States District Judge